CASE 35—INDICTMENT FOR MAINTAINING A COMMON PUBLIC NUISANCE.

# Commonwealth v. Western Union Tel. Co.

## APPEAL FROM JEFFERSON CIRCUIT COURT.

FROM A JUDGMENT SUSTAINING A DEMURRER TO THE INDICTMENT THE
COMMONWEALTH APPEALS. AFFIRMED.

NUISANCE—GAMING 'HOUSE—BETTING ON HORSE RACES—TELEGRAPH
COMPANIES DELIVERING RACE TRACK NEWS.

It being the duty of telegraph companies, under Kentucky
Statutes, section 1346, to receive and transmit all messages
tendered to it which are couched in decent language, the fact
that such a company received and transmitted race track news
to certain persons who were engaged in maintaining a com-
mon nuisance at a certain place in betting and gambling on
the races thus reported to them, and that the company de-
livered the news to such persons at their gaming house, with
knowledge that such news was to be used for gaming and bet-
ting purposes, did not make the company guilty of maintain-
ing the nuisance complained of.

ROBT. J. BRECKINRIDGE, ATTORNEY-GENERAL FOR COMMONWEALTH.

KOHN, BAIRD & SPINDLE, RICHARDS & RONALD AND GEORGE
H. FEARONS, FOR APPELLEE.

(No briefs in the record.)

OPINION OF THE COURT BY CHIEF JUSTICE PAYNTER—AFFIRMING.

The indictments charge the appellee with the offense
of unlawfully keeping and maintaining a common nuisance.
It is averred in them that Ed. Alvey and others had a house
in the city of Louisville, commonly called "The Kingston,"
in their occupation and under their control, and habitually
sold pools upon horse races run at various cities and places
in the United States, and did habitually suffer, permit,
and procure divers idle and evil disposed persons to ha-
bitually assemble in that house, who engaged in betting,

winning and losing money on horse races, to the common nuisance and common annoyance of all good citizens of the neighborhood, and those passing and repassing, etc. As to the appellee, it is averred that it is a corporation organized for the purpose of conducting the business of common carrier of intelligence by telegraph in the United States; that it, unlawfully designing to assist and aid and abet Alvey and others in the pool selling in the house mentioned, habitually received from divers race courses in the United States messages and intelligence concerning horse races, to wit, the names of horses entered in races, names of owners, trainers, riders, drivers, and distances of the races, terms, conditions, and state of betting at the races, condition of the weather and tracks of race courses, with the design to enable the persons assembled at the house of Alvey and others to bet upon races. , It is further averred that the appellee transmitted and delivered to Alvey and others, at the Kingston, the information as to the result of races, with the view of enabling him and others to pay the bets made on races; that the information and intelligence transmitted and services rendered by the appellee was a necessary and essential service and means of carrying on and maintaining the existence of pool selling by Alvey and others, of which fact the appellee was aware.

It will be observed that the Kingston is averred to be under the control and management of Alvey and others. It is not averred that the appellee had any control of or management of the building. Neither is it averred that it was engaged in keeping or maintaining a common nuisance except as stated. The essence of the charge against it is that it transmitted over its line information which enabled Alvey and the evil-disposed persons who assembled

Commonwealth v. Western Union Tel. Co.

at the house to engage in betting on races at distant points and to pay bets upon their result. At common law, a common gaming house is a nuisance. It is detrimental to the public, because it promotes cheating and other corrupt practices; it encourages idleness and excites the desire to obtain money in an improper way. Persons who are in the occupation and control of such houses are guilty of maintaining a common nuisance. 1 Russ. Crimes, 741; 2 Bish. Cr. Proc., 278. As it is not averred that the appellee is in the occupation and control of the house, the question arises whether it is guilty of keeping the house by the transmission of information. It is a common carrier of intelligence and information, and was created and organized for that purpose. Section 1346, Kentucky Statutes, denounces a penalty of not less than $10 nor more than $500 against an agent, officer, or manager of a telegraph or telephone line who, from corrupt or improper motives, or willful negligence, shall withhold the transmission or delivery of messages of intelligence for which the customary charges have been paid or tendered. If a person desires to transmit a message over a telegraph line, if it is couched in decent language, it is the duty of the company to receive and transmit it upon the tender or payment of the customary charges for such services. The very purpose of its creation is to serve the public, and it can not refuse to do so without making itself liable for its refusal. It has no more right to refuse to send a message when the charges are paid or tendered, when the message is couched in decent language, than a railroad company has to refuse to carry a passenger who tenders or pays his fare. A railroad company has a right to refuse to carry a passenger who is disorderly, or whose conduct imperils the lives of his fellow passengers or the

officers or the property of the company.  It would have
no right to refuse to carry a person who tendered or paid
his fare simply because those in charge of the train be-
lieved that his purpose in going to a certain point was to
commit an offense.  A railroad company would have no
right to refuse to carry persons because its officers were
aware of the fact that they were going to visit the house
of Alvey, and thus make it possible for him and his asso-
ciates to conduct a gambling house.  Common carriers
are not the censors of public or private morals.  They
can not regulate the public and private conduct of those
who ask service at their hands.  It was certainly no wrong
*per se* for the appellee to transmit over its line the infor-
mation which it is charged to have transmitted.  The sim-
ple fact that persons who received the information, and as
a result of it, were guilty of unlawful acts, does not make
the appellee a violator of the penal or criminal law.  If
in doing so it violated the penal or criminal law, it would
be likewise guilty in transmitting information to the
newspapers of the country as to prospective prize fights
and horse races, because the information thus published
induced persons to engage in betting on their results.  The
case of Com. v. Churchill, 136 Mass., 148, is not exactly an-
alogous to the case under consideration, but it serves to
illustrate the difference between the principal in control
of premises upon which a nuisance is maintained and an
agent whose act in some degree contributed to it.  In that
case the nuisance consisted in selling intoxicating liquors,
etc.  The defendant made some of the illegal sales.  In
passing upon the effect of his acts, the court said:  "The
Massachusetts decisions have never pressed the liability
of a servant for keeping or maintaining a nuisance, con-
sisting of a tenement in the possession of his master, un-

der circumstances like the present, beyond cases where the servant had had charge and control of the place, for a short time at least. . . . It is true that sales in the presence of a master do in some degree aid the master in keeping the tenement. But so do purchases, which, nevertheless, are not misdemeanors of any description. . . . The distinction between acts which amount to maintaining the nuisance and those which do not is one of degree. We do not think that the misdemeanor of unlawfully selling, committed by a servant, can be said, as a matter of law, to amount to maintaining a nuisance, unless he has assumed a temporary control of the premises, or in some other way emerged from his subordinate position to aid directly in maintaining it. . . . And none of our cases have gone further than to leave the general question to the jury, whether the defendant aided in keeping the tenement, when it appeared that he did so by exercising some form of control." In that case the agent might have been prosecuted for selling liquor, but the court held that he was not guilty of maintaining the nuisance, because he was not in the occupation and control of the premises. He was guilty of an illegal act which contributed to the nuisance, yet the court would not hold that he maintained it. In the case at bar it was legal for the appellee to furnish the information, but it is claimed that it is liable because, after that information was obtained, parties used it in such a way as to make their acts unlawful. The court properly sustained a demurrer to the indictments.

The judgment is affirmed.