STATE vs. DANIEL PANARO.

1.   GAMING—STATUTES—POLICE POWER.

*Rev. Code* 1851, amended to 1893, *p.* 961 (11 *Del. Laws, c.* 454) § 1, making it a misdemeanor for any person to keep a gaming table or to be interested in the keeping of such table, is directed against gambling appliances themselves, and is within the police power of the state, being enacted for the protection of the morals of society.

2.   GAMING—STATUTES—CONSTRUCTION.

*Rev. Code* 1852, amended to 1893, *p.* 961 (11 *Del. Laws, c.* 454) § 1, making it a misdemeanor for any person to keep or exhibit a gaming table, or to be interested in the keeping of such a table, denounces two offenses, one the "keeping" or maintaining of a table upon which persons are authorized to play games of chance, and the other being interested in the keeping; hence one who keeps a gaming table is guilty, though he derives no profit from the keeping.

(*May* 7, 1914.)

Judges WOOLLEY and RICE sitting.

*Josiah O. Wolcott*, Attorney General, for the state.

*Robert G. Harman* for the defendant.

Court of General Sessions, New Castle County, May Term, 1914.

Daniel Panaro was indicted for violation of the law against gaming tables. On motion to strike the testimony of a witness. Motion denied.

See *State v. Morris, ante,* 91 *Atl.* 998.

INDICTMENT (No. 27, May Term, 1914) for violating the provisions of *Chapter* 454, *Volume* 11, *Laws of Delaware (Rev. Code* 1852, amended to 1893, *page* 961), against keeping gaming tables.

Counsel for the defendant moved that all of the testimony of one of the witnesses be stricken out upon the ground that the testimony did not show that the defendant was "concerned in interest" in keeping a gaming table, and therefore did not prove that the defendant had violated any provision of one statute under which he was indicted.

WOOLLEY, J.:—[1, 2] The statute under which the defendant is indicted is *Chapter* 454, *Volume* 11, *Laws of Delaware (Revised Code* of 1852, amended to 1893, *page* 961), and is as follows:

"Section 1. That if any person or persons shall keep or exhibit a gaming table, faro bank, sweat cloth, roulet table, or other device under any denomination, at which cards, dice or any other game of chance is played for money, or other thing of value, or shall be a partner or concerned in interest in the keeping or exhibiting such table, bank, sweat cloth, or other device, he, she or they shall be deemed guilty of a misdemeanor," etc.

The indictment under which the defendant is being tried was obviously drawn in contemplation of the two provisions of this one paragraph of the statute, and contains two counts, the first of which charges simply that the defendant kept or exhibited a gaming table at which cards, dice or other games of chance were played for money, and the second, that the defendant was "concerned in interest" in such a table being kept and exhibited for such a purpose.

It is contended that the mere keeping and exhibiting of a

gaming table at which games of chance are played for money is not within the prohibition of the statute, and hence the first count states no offense, and that the only offense contemplated by the statute is that of being concerned in interest in the keeping of such a table for such a purpose, and as the testimony of the witness discloses no such interest, no offense under the second count is proven.

The statute in question does not prohibit gambling, but is designed rather to reduce the opportunities and discourage the facilities for gambling. There is nothing in this statute which makes it unlawful for four men to play cards for money upon a table, nor does it make it unlawful for the owner of a table to permit it to be used for card playing for stakes, when the table is neither kept nor exhibited for that purpose. The object of the statute as its title indicates, is "the suppression of gambling," and the particular method pursued by the Legislature to attain this end, was to prevent and prohibit the keeping of gambling tables and devices, under circumstances of notoriety and opportunity, which would induce or enable men the more readily to gamble.

This enactment is within the police power of the state, and under that power, a state may enact such laws of regulation and restraint over men and things as are reasonable and proper to protect the lives, health, comfort and property of its citizens and to promote the order, morals and welfare of society.

The meaning of this statute is such as its plain words convey. A gaming table is a table used for gambling purposes, upon which games of chance are played for stakes. The use to which the table is put characterizes the table and determines its part in the crime. If a table so used and thus characterized is kept and exhibited for the uses to which it is put, then he who keeps or exhibits a table for such a purpose, violates the law.

The words "keep" or "exhibit", as used in the statute, embrace no technical meaning. They mean to maintain, to control, to carry on, to display. The display of such a table by one having authority over it, and the invitation or permission of the owner to use the table for gambling purposes, constitute a keep-

ing and exhibiting within the meaning of the law. *Bibb v. State*, 83 *Ala.* 84, 3 *South.* 711; *Bibb v. State*, 84 *Ala.* 13, 4 *South.* 275; *Commonwealth v. Colton*, 74 *Mass.* (8 *Gray*) 488.

It is within the police power of the state for the General Assembly to consider that the morals of the community are injured by the keeping and exhibiting of gaming tables even when their owners are not financially interested in the outcome of the games, and that the morals of society are benefited by restricting the opportunities of its members to engage in gambling practices. This the General Assembly has done by enacting that the keeping and exhibiting of such tables constitute a misdemeanor, without regard to the owner thereof being "concerned in interest" in the games or in profits derived from the use of the table.

The second provision is altogether different from the first, and is obviously intended to reach beyond the person who actually keeps and exhibits a gaming table, to any person who "shall be a partner or concerned in interest in the keeping or exhibiting such table." We are of opinion that the statute contemplates two offenses, and that the interest that determines the latter is no material ingredient of the former. The motion is refused.

Upon the subsequent failure of the state to prove that the table was kept or exhibited by the defendant, the Attorney General entered a *nolle prosequi*.