VIRGINIA K. McMENAMY, Plaintiff, *v.* WESTERN UNION TELEGRAPH Co., Defendant.

City Court of Albany, April 14, 1948.

*Nathan H. Richman* for plaintiff.

*Dunton F. Tynan* for defendant.

HERZOG, J.   The plaintiff's complaint was oral.   As supplemented by bills of particulars, it sets forth the following facts: At about 11:00 A. M. on August 2, 1947, the Maryland Syndicate caused to be delivered to defendant's office in Baltimore, Maryland, the following telegram, for transmission to the plaintiff:

```
        Y  BRA373  4  COLLECT — WUX  BALTIMORE  MD
2 1136A
        V K MCMENAMY, CARE W M WHITNEY AND CO
        ALTERATION DEPT NORTH PEARL ST ALBANY
        NY—
        ISOLATIONIST FIFTH WASHINGTON—
                MS
```

It then alleges that due to the negligence of defendant's agents, servants or employees, this telegram was not delivered to the plaintiff until August 4, 1947, and that it was received, "too late to place the bet." Plaintiff alleges that if the telegram had been delivered with reasonable dispatch, she would have wagered $100 on "Isolationist" in the fifth race at Washington Park on August 2, 1947; that "Isolationist" won the race; that her share of the winnings would have been $190, and for this sum, she brings this suit. In addition, it is alleged that the tipping service cost the plaintiff $19 and the telegram seventy-three cents, making the total damages suffered the sum of $209.73. This is a motion by the defendant to dismiss the complaint on the ground the plaintiff has failed to allege facts sufficient to constitute a cause of action. This motion is addressed to the pleadings. Therefore, I must assume that the facts alleged by the plaintiff are true and that the defendant negligently failed to deliver the above telegram with reasonable dispatch. This narrows the questions to be decided simply to those of damages.

The first item of damages alleged is $190, which the plaintiff says she would have won betting on "Isolationist." I do not, at this point, take up the question of the legality or illegality of the bet plaintiff alleges she would have made. It is sufficient to hold that this element of damages is too remote, contingent and speculative. Who can say she would have bet $1, $100 or $1,000? Who can say that she would have bet "Isolationist" "straight", "show", "place", or "across the board", to use the parlance of the track? The wager of $100 "on the nose" is a substantial wager and strictly a gamble. There is no such thing as a "sure thing." As proof of this, I need only to refer to one of numerous famous "long shot" winners — "Jim Dandy", the 100–1 shot, who beat "Gallant Fox" at Saratoga.

It is my opinion that this case falls directly into that class of lawsuits arising from the transmission of telegrams, which deal with *proposed* contracts, where damages for prospective profits are not allowed. (*White* v. *Western Union Telegraph Co.,* 153 App. Div. 684; 62 C. J., Telegraphs and Telephones, § 272.)

The language used in *Kiley* v. *Western Union Telegraph Co.* (39 Hun 158, 163) is particularly appropriate.

"Who can say that he would have made the contemplated purchase? It is true that he might have done so, but there is no certainty that he would have made and concluded a contract."

And, at page 164: "The damages which may be recovered

must be the natural and direct result arising from the breach of the agreement, and must also be certain both in their nature and in respect to the cause from which they flow. Under the rule thus qualified, speculative, contingent and remote damages, which cannot be traced directly to the breach complained of, are excluded.''

I am more troubled by the allegations of damages with respect to the payment of $19 for the tip and seventy-three cents for the telegram. The first question that presents itself is whether the purchase and sale of tips on horse races is illegal. There are few reported decisions on this subject. Perhaps it might be better for the court to take judicial notice of facts which cannot escape observation. Anyone who has ever been to a race track has been besieged by card sellers hawking their wares, with the usual sales talk of, '' Three, four, or five winners yesterday. Get your winners here, folks.'' Some newspapers are published for the sole purpose of disseminating racing information and the selections of handicappers. A large number of other newspapers publish selections. It must be assumed that this is done for the purpose of providing information as a service to '' horse-betting minded '' readers and that newspapers pay for such selections. For the fine distinction between tips and selections, see *Armstrong Racing Publications* v. *Moss* (181 Misc. 966). However, whether they are called selections or tips, the sale of both is such a common occurrence that it is generally recognized as lawful by the public. The Penal Law does not appear to proscribe this practice. It is true that in *Maxim & Grey Co.* v. *Sheehan* (37 Misc. 368) the court refused to grant the equitable relief of injunction to restrain the defendants from violating an agreement not to sell tips sold to them by the plaintiff. The court said, at page 370: '' The tips and advertisements of plaintiff are devised and intended as an aid to and an incitement of this forbidden gambling and betting, and such aids and inducements may, by bettors and gamesters, be availed of as well in poolrooms as on race tracks. This court will not lend its equitable process in aid of plaintiff in its efforts to promote and induce acts forbidden by the Constitution and the law.''

Most jurisdictions recognize that the publishing and selling of selections and racing information is lawful. (*People* v. *Brophy,* 49 Cal. App. 2d 15; *Commonwealth* v. *Western Union Tel. Co.,* 112 Ky. 355; *Matter of American Tel. & Tel. Co.,* 126 Pa. Superior Ct. 533, 539; *Pennsylvania Publications* v. *Pennsyl-*

*vania Public Utility Comm.*, 349 Pa. 184; *People* v. *Engeman*, 129 App. Div. 462, affd. 195 N. Y. 591; 38 C. J. S., Gaming, § 111, p. 167; § 83, p. 145.)

It would appear from the above that there was nothing illegal in the mere purchase of this tip by the plaintiff or the transmission of it by the defendant. (For an analysis of the decisions covering the duty of telegraph companies to transmit messages facilitating betting on horses or sports, see Annotation, 153 A. L. R. 463.) The question, then, is whether or not the plaintiff can recover the cost of the tip and telegram, which is apparently a legal transaction, when she alleges that she intended to use that information to place a bet on a horse race in Illinois, which bet was to be consummated in Baltimore, Maryland.

Wagering on horse races in New York is unlawful (Penal Law, §§ 991, 992), except that by constitutional authority pari-mutuel betting has been made lawful at tracks in New York State. I, personally, fail to see the distinction, from a moral standpoint, between gambling at a race track and betting anywhere else. However, it is not for me to question the wisdom of the constitutional framers and the Legislature in permitting such betting. In view of the legality of pari-mutuel betting at the tracks, it would have been possible for the plaintiff to use this information lawfully, had it been a tip on a race in New York State. *Quaere:* whether she could recover if such had been the fact, and the telegram had been delivered late, through the negligence of the defendant. My decision must be based, however, on the allegations in the complaint, and the plaintiff has alleged specifically that she intended to use the information to place a bet in Maryland on a horse race in Chicago. Betting away from the track in New York is unlawful. (*Matter of Stewart* v. *Department of State*, 174 Misc. 902, affd. 260 App. Div. 979, motion for leave to appeal denied 261 App. Div. 851, motion for leave to appeal denied 285 N. Y. 861.)

Comity does not require a State court to recognize the validity of a contract which, under its laws, is declared to be against public policy, immoral and void. (*Dearing* v. *McKinnon Dash & Hardware Co.*, 165 N. Y. 78; *Wiggins* v. *Postal Tel. Co.*, 130 S. C. 292, Note, 44 A. L. R. 783.) Even if such were the judicial policy of this State, the bet plaintiff alleges she would have made would have been illegal under the laws of Maryland. (Annotated Code of Maryland, art. 27, § 291.) It has long been recognized that a plaintiff cannot be permitted to recover upon a claim predicated upon an illegal contract. (*Weld* v. *Postal*

*Telegraph-Cable Co.*, 199 N. Y. 88; *Nielson* v. *Donnelly*, 110 Misc. 266; 44 A. L. R. 783.)

In addition, it is held that a contract, though not illegal in itself, may be accompanied by circumstances surrounding its making, which would deter courts from enforcing it or rights based on it. (*Ingersoll* v. *Coal Creek Coal Co.*, 117 Tenn. 263.)

It must be carefully noted that the allegations of the complaint state that the reason plaintiff suffered damages is that she did not get the telegram in time to place a bet. The bet alleged could not have been legally made. The illegality of the wager necessarily permeates the whole transaction and taints it with the unlawfulness inherent in the placing of such a bet. This case thus falls within the general rule that the court will not allow itself to be made an instrument for enforcing obligations forbidden by law. (See 6 R. C. L. Contracts, § 215, pp. 816–817.) To permit recovery here would be to recognize the validity of betting on horse races away from the tracks, which is forbidden by the laws of this State.

The entire cause of the plaintiff is tainted with the illegality of the wagering contract plaintiff alleges she would have made. Therefore, motion of the defendant is granted, and the complaint is dismissed.