## Commonwealth v. Ambrosius Industries, Inc.

January 27, 1950.

Loraine Mix, Judge.

**96**

Frank A. Ropke, Commonwealth Attorney, Carl C. Ousley, Jr., Assistant Commonwealth Attorney, A. E. Funk, Attorney General, Zeb A. Stewart, Assistant Attorney General, for appellant.

W. S. Heidenberg and Harry L. Hargadon for appellee.

JUDGE LATIMER—Affirming.

Appellee, Ambrosius Industries, Inc., by indictment was charged with maintaining a common nuisance at its place of business in the Strand building in Louisville. Appellee demurred to the indictment, insisting it was bad in that (1) the indictment does not sufficiently describe the party charged; (2) it does not contain the names of the handbook operators who were the recipients of the information disseminated by appellee; and (3) the dissemination of the racing news does not per se constitute a criminal offense.

The court sustained the demurrer. The Commonwealth appeals from the order sustaining the demurrer, insisting that the court erred since gambling, or the promotion of gambling, in any form is a nuisance per se and will not be permitted under any conditions.

Appellee insists that the court properly sustained the demurrer, and that the indictment was bad in the three particulars above set out.

The court below apparently gave no weight to the contention that the indictment did not sufficiently describe the party charged. We, too, are not impressed

with the argument in respect thereto. Appellee could not be misled in any way as to the party involved. It was either appellee, or a firm which it owned, which was acting by and through Fred H. Ambrosius, an officer or agent of the corporation.

We shall next discuss the third reason urged for sustaining the demurrer,. and which was recognized by the court as a valid reason; that is, that the dissemination of racing news does not per se constitute a criminal offense. This is true taken by itself and without relation to other things. We agree with appellant that Commonwealth v. Western Union Telegraph Co., 112 Ky. 355, 67 S. W. 59, 60, 57 L. R. A. 614, 99 Am. St. Rep. 299, is inapplicable here. As was held in the Western Union case, "the very purpose of its creation is to serve the public, and it cannot refuse to do so without making itself liable for its refusal. * * *" In the Western Union case we are dealing with a common carrier "created and organized for that purpose." In the instant case we have a private corporation, apparently created and organized solely for the purpose of disseminating race news for the promotion of gambling, charged with aiding, abetting and promoting the operation of 250 illegal businesses from premises allegedly under the control of the corporation.

There is also reliance on the case of State ex rel. Dooley et al. v. Coleman, Sheriff, 126 Fla. 203, 170 So. 722. There the question was presented as to whether or not the employees, who installed telephone apparatus and service with the knowledge that it was to be used in maintaining a gaming house, were guilty of aiding and abetting such crime. Here again we have a public utility, organized and created to carry on legitimate business, which furnishes an instrumentality ordinarily used for legitimate purposes. For the same reasons the Western Union Telegraph Company case is inapplicable, the Florida case is likewise inapplicable. The nature, character of the business proposed solely to be done, and the purpose for which it was created, are the differentiating factors.

We now come to a consideration of the second proposition; that is, whether. or not it was necessary to name the handbook operators. The indictment charges that appellee "through its officers, agents and employ-

ees is knowingly furnishing racing results and racing news to bookmakers, and known to be such by said corporation, in Jefferson County, Kentucky, and said corporation is thereby aiding, abetting and assisting said bookmakers in the operation of their unlawful businesses * * *."

It is further alleged that the names and locations of the 250 handbook operators who are furnished racing results "are well known to the said corporation." It is further alleged that "the approximately two hundred and fifty handbook operators in the County of Jefferson who are subscribers to the information and service as hereinabove set out have all been arrested numerous times in Jefferson County, Kentucky, and their names and places of arrest have appeared on numerous occasions in the Louisville Courier Journal and the Louisville Times."

Thus we see, under the allegations of the indictment, that appellee is charged with aiding and abetting someone else in an unlawful business but that someone else is not named. Unlike felony cases, this being a misdemeanor, acts of aiding and abetting constitute such aider or abettor a principal. Consequently, the indictment cannot be broken into piecemeals or portions of offense. The offense is complete when the disseminated news is used for the purpose of gambling. It is obvious, therefore, that it becomes necessary either to set out the names of the handbook-makers thus aided and abetted or to allege that they are unknown. This has been the accepted rule through the years. Clary v. Commonwealth, 163 Ky. 48, 173 S. W. 171; and Duncan v. Commonwealth, 165 Ky. 247, 176 S. W. 984.

We agree quite readily with most of what appellant says in brief, and we are in harmony with the principles enunciated in cases cited therein, but these cases can in no way control the matter of a good or bad indictment. The indictment should either name the person whom it is charged was aided and abetted, or allege that such party is unknown. For this reason only, the judgment is affirmed.