78 A.2d 810 (1951)
TOLLIN
v.
STATE.
Court of General Sessions of Delaware, New Castle.
January 31, 1951.
Vincent A. Theisen, Deputy Atty. Gen., for the State.
*812 Edmund N. Carpenter, II (of Richards, Layton & Finger), of Wilmington, for defendant.
*811 CAREY, Judge.
When the raiding party entered the Episcopo premises on May 9, an officer immediately picked up the telephone and heard a message coming over the wire. On the witness stand, this officer was asked to state the contents of that message. Defense counsel objected because of Code Section 5232 reading in part as follows: "5232. Sec. 52. Injury to Telegraph or Telephone Property; Disclosure of Messages, etc.: Any person or persons * * who shall read, take copy, make use of, disclose, publish or testify concerning, any dispatch or message, communication or report intended for another passing over such telegraph or telephone line, wire, or cable, in this State * * * shall be deemed guilty of a misdemeanor * * * Provided, that nothing in this Section shall apply to an employee or authorized agent of a telegraph or telephone company."
The State contended that this statute was not intended to apply to police officers and, in any event, should apply only to messages heard as a result of wire tapping and not to one merely intercepted as in this case. The objection was sustained since Section 5232 refers to any person or persons except employees of a carrier, making it a misdemeanor to testify concerning any message intended for another. This interpretation is fortified by a comparison with Code Section 5230, which shuts the mouths of a carrier's employees, but which expressly permits them to produce a message in answer to lawful process. See Nardone v. United States, 302 U.S. 379, 58 S.Ct. 275, 82 L.Ed. 314. The foregoing ruling is based, not upon any constitutional consideration, but upon the express wording of the statute.
At the end of the State's case, defendant's counsel moved for a verdict of not guilty on the ground that a prima facie case had not been made out. In the course of the argument, there was some discussion as to the meaning of the term "concerned in interest". There is no necessity for defining that expression here, for, under any definition which has been suggested, certain statements or admissions made by Tollin to the police officers immediately after the raid would justify the conclusion that he was "concerned in interest" in keeping the paraphernalia listed in the indictment, even though it was technically owned by, or leased to, the corporation. The problem presented is, rather, whether that equipment was kept "for the purpose of receiving and recording bets upon the result of a contest of speed of beasts". The equipment specified in the information was all located at 839 Tatnall Street; it was not charged that Tollin had any interest in any equipment in the Episcopo establishment. Concededly, no bets were received or recorded at the premises of Delaware. The paraphernalia itself is not made or designed specifically for gambling purposes, as contrasted with devices like roulette wheels and slot machines. Actually, the evidence showed that the only use made of this equipment was the transmission of news. This information was obviously of great help to those who receive or place bets, since it included not only racing results but also last-minute details prior to a race. Moreover, I am not so naive as to believe that Tollin did not realize the news was being used by others to facilitate gambling. But, notwithstanding that knowledge on his part, is it a violation of the quoted statute merely to disseminate such news, without more? Several Courts, under somewhat similar statutes, have answered this question in the negative. People v. Brophy, 49 Cal.App.2d 15, 120 P.2d 946; People v. Corica, 55 Cal.App.2d 130, 130 P.2d 164; Hagerty v. Coleman, 133 Fla. 363, 182 So. 776; Commonwealth v. Western Union Telegraph Co., 112 Ky. 355, 67 S.W. 59, 57 L.R.A. 614; Pennsylvania Publications, Inc., v. Pennsylvania Public Utility Commission, 349 Pa. 184, 36 A.2d 777, 153 A.L.R. 457; see annotation in 153 A.L.R. 463. Under a mandate requiring gambling statutes to be liberally construed in favor of the State, the Arkansas Court took a contrary view in Albright v. Muncrief, 206 Ark. 319, 176 S.W.2d 426.
*813 The State suggested that a distinction should be drawn between public utilities and private persons, citing Commonwealth v. Ambrosius Industries, Inc., 312 Ky. 95, 226 S.W.2d 537. I can see no reason for any such distinction.
The writer has previously pointed out that in Delaware a criminal statute is to be strictly construed against the State. State v. Johnson, 4 Terry 294, 46 A.2d 641. No exception to this rule exists in favor of gambling laws. Following the majority rule, therefore, the conclusion is that the mere dissemination of racing information, with nothing more, is not a violation of the Act; only by a strained interpretation could the existing law be said to prohibit it; a closer relationship to the gambling transaction must be shown in order to convict. That restrictions upon this kind of activity would be of great help in suppressing illegal betting is clear; but the desirability, nature and extent of regulatory action rests with the lawmaking authorities, subject to constitutional limitations. At least two states have adopted legislation expressly imposing restrictions upon it. See Parkes v. Bartlett, 236 Mich. 460, 210 N.W. 492, 47 A.L.R. 1128; State v. McLaughlin, 132 Conn. 325, 44 A.2d 116.
The State did undertake to show that Tollin was directly connected with bookmaking activities, and was using the paraphernalia in furtherance thereof. The evidence failed to meet the standard required in criminal cases. As a trier of fact, I was not convinced that the admissible evidence was sufficient to prove the defendant's guilt beyond a reasonable doubt. I therefore saw no occasion to require defendant to present any testimony and a verdict was entered in his favor.
It is perhaps proper to mention one phase of the testimony on the last mentioned point. The State attempted to show that the fees mentioned in the written contracts were wholly fictitious and that the amounts actually paid to defendant or to Delaware varied in proportion to the amount of booking done by a customer each week. Had this been demonstrated by competent evidence, I should have had no hesitancy in inferring a definite connection of the defendant with bookmaking activities, and would have required him to go forward with his defense. In order to establish the point, the State called to the stand certain individuals who were asked several questions about their relations with Tollin and Delaware. With the exception of one (who said that he had never paid more than the stipulated price), all denied having ever purchased the news service or having had any transactions of any sort with either the defendant or the corporation. In a few instances, counsel pleaded surprise and propounded questions about recent conversations between the witnesses and the prosecuting attorney in the presence of some police officers. Those so questioned denied having previously told a different story. The police officers, however, testified that these men had orally given to the attorney in their presence a statement which would indicate that they had bought the service and had paid varying amounts for it far in excess of the contract price the exact figure depending upon the business done by them. Evidence concerning these alleged extrajudicial statements was admissible only for the purpose of discrediting the witnesses and not as substantive proof of the subject matter as against the defendant. State v. Hopkins, 6 W.W.Harr. 194, 172 A. 841; In re Kemp's Will, 7 W. W.Harr. 514, 186 A. 890; Ellis v. United States, 8 Cir., 138 F.2d 612. There was, accordingly, no affirmative evidence in the record to support the contention.