THE STATE OF DELAWARE v. DOMINIC CARBONE, *et al.*

(*March* 22, 1956.)

LAYTON, J., sitting.

*Frank O'Donnell, Jr.,* Deputy Attorney-General, for the State.

*Michael A. Poppiti, Hiram W. Warder* and *Stewart Lynch* for the Defendants.

Superior Court for New Castle County, No. 223, Cr. A., 1955.

LAYTON, J.:

Title 11, *Del. C.* § 666, among other things, makes it a misdemeanor to be a "* * * partner or concerned in interest in the keeping or exhibiting a gaming table * * *."

In *State v. Fountain*, 1 *Marv.* 532, 41 *A.* 195, 196 (Gen. Sessions, *Del.* 1893), the Court interpreting this very language charged a jury as follows:

"* * * another provision (the one in question) covers the case where, though the person may not own, keep, or exhibit the device, yet, if he shall be a party in interest,—this is, if he shall

be a sharer in the profits that are derived from the carrying on of that business,—he shall be just as much guilty of the offense as if he exhibited and kept it."

Again, in *State v. Titleman*, 7 *Boyce* 443, 108 *A*. 92, 93 (Gen. Sessions, *Del*. 1918), the Court gave a similar interpretation of the language "concerned in interest in the keeping or exhibiting" of a gaming table. The Court charged the jury in this language:

"And if a person charged with being concerned in interest in exhibiting a gaming table, when games of chance are played for money, should either directly or indirectly be paid for permitting the use of the table * * * he would be a violator of the law."

The Attorney General argues very strenuously that neither of the above decisions is authority for anything more than the proposition that one is "concerned in interest" who reaps a financial reward from a gaming table. It is his position that the Act in question should be broadly interpreted[2] even to the lengths that a person who receives no financial benefit therefrom might, nevertheless, be construed as being "concerned in interest" in keeping or exhibiting a gaming device. Concededly, the charge of the Court in the *Fountain* case, wherein defendant admitted receiving some money each night from the proceeds of the game, might not be regarded as direct authority for the proposition that one who receives no direct financial benefit therefrom, may yet be "concerned in interest" in maintaining or exhibiting a gaming table. But the *Titleman* case is not so easily dismissed. To my mind, it represents rather clear authority for the principle that he who sanctions a gaming table as a mere volunteer is not "concerned in interest" under the statute in question.

---

[2]It must be borne in mind, however, that the scope of the construction of a criminal act is subject to the principle that a criminal statute (including a gambling statute) must be strictly construed against the State. *Tollin v. State*, 7 *Terry* 120, 78 *A*. 2d 810. (Del. Super Ct.)

■ I concede, as the Attorney General argues, that the general scheme of the Act is to discourage gambling by reducing the means and facilities therefor. As Judge Woolley stated in *State v. Panaro*, 5 *Boyce* 230, 91 *A.* 1000 (Del. Gen. Sess.) :

"The statute in question does not prohibit gambling, but is designed rather to reduce the opportunities and discourage the facilities for gambling. There is nothing in this statute which makes it unlawful for four men to play cards for money upon a table, nor does it make it unlawful for the owner of a table to permit it to be used for card playing for stakes, when the table is neither kept nor exhibited for that purpose. The object of the statute as its title indicates, is 'the suppression of gambling,' and the particular method pursued by the Legislature to attain this end, was to prevent and prohibit the keeping of gambling tables and devices, under circumstances of notoriety and opportunity, which would induce or enable men the more readily to gamble."

■ I would further concede the possibility that under a given set of facts a person who receives no financial benefit therefrom might be deemed to be "concerned in interest" in keeping or maintaining a gaming device. Thus, a group of volunteer firemen whose consuming interest is the maintaining of an efficient, up-to-date volunteer fire company, hold a carnival and, among other things, invite professional gamblers to conduct a gambling game the proceeds of which go to the fire company. Under a very broad construction of the Act, the members of the fire company might conceivably be regarded as being "concerned in interest" in exhibiting a gambling device. I do not decide the point for it is not before me. Here, although the proceeds of the game admittedly went to a charitable organization, the Information does not charge the defendants with being members of, or interested in, this organization. Thus, they must be regarded as pure volunteers.

Accordingly, the Information is dismissed.