Aaron F. Goldstein, J.
The charge against the defendant is that the “ premises are used for business contrary to the last issued Certificate of Occupany. Certificate of Occupancy 35823 was issued September 4,1946 for a one-family dwelling: Premises are being used for business,” in violation of section C26-185.0 of the Administrative Code of the City of New York. This section of the code provides inter alia as follows: “It shall be unlawful to make any changes of occupancy or use of any structure if such change is inconsistent with the last issued certificate of occupancy.”
*101 Upon the trial the facts were stipulated to be as follows. The defendant and his wife are the owners of a one-family dwelling at 150-23 99th Place, Ozone Park, Queens County. On March 23, 1962 they had on the roof of the premises a small structure, which was presumably a pigeon coop. There was a window in the coop overlooking the Aqueduct Race Track. There was also a telephone and a pair of binoculars in the coop, and the coop, telephone and binoculars were used in the following manner. An individual would go up on the roof and into the coop when horse races were being run at Aqueduct during the racing season. He would watch the track and races through a pair of binoculars or he would get information pertaining to the races from someone at the track by using the binoculars. The information was as to the winners of the races and, in addition, as stated in defendant’s brief, “ the finish line and tote board could be seen from the roof of the house ”. He would then telephone the information aforesaid from the telephone in the coop, which telephone was an extension of the regular telephone in the defendant’s premises, to the Delaware Sports Service (successor to Delaware Wired Music) in Wilmington, Delaware. For this use that was made of the structure on the roof of the premises, the defendant and his wife were paid a stipulated rental or compensation by Delaware Sports Service, which amount was declared by them in their income tax returns.
It was further stipulated that the telephone in the coop was originally installed and used by the defendant in connection with his raising and flying of carrier pigeons. There is no stipulation or proof in the record as to whether in fact on the day in question there were any pigeons in the coop.
There was received in evidence a certificate of occupancy for the premises issued by the Department of Housing and Buildings of the City of New York which recites that permissible use and occupancy was a two-story one-family dwelling with a residence occupancy classification.
There are two questions to be determined by this court. First, whether there was a business use of the premises, and second, if there was a business use, was it a lawful and proper accessory use of the premises. The questions will be considered in that order.
The facts in each particular case determine whether there was a business use of the premises. Business is an activity with the object of pecuniary gain or profit or engaging in activities in pursuit of gain. In Matter of Steinbeck v. Gerosa (4 N Y 2d 302, 308) the court defined “ business ” as follows: “‘Business ’ has been described as a word of ‘ large * * * import ’, *102 a ‘ very comprehensive term It encompasses ‘ That which occupies the time, attention and labor of men for the purpose of livelihood or profit, but it is not necessary that it should be the sole occupation or employment. It embraces everything about which a person can be employed ’. (Bouvier’s Law Dictionary [8th ed.], Vol. I, p. 406; Flint v. Stone Tracy Co., 220 U. S. 107,171.) ” To the same effect is Flint v. Stony Tracy Co. (220 U. S. 107, 171) cited in the Steinbeck case.
To explain the nature of the activity of Delaware Sports Service, the defendant refers this court to Tollin v. State (46 Del. 120). An examination of that case discloses that the business of Delaware Sports Service, successor to Delaware Wired Music, is the dissemination of sports news over telephone wires to customers who paid a weekly sum for the information. Most of the news concerned horse racing at various tracks throughout the country. While it was held that the paraphernalia and equipment as used in the premises did not violate the State’s gambling law, the court said (p. 125): ‘ ‘ This information was obviously of great help to those who receive or place bets, since it included not only racing results but also last-minute details prior to a race. Moreover, I am not so naive as to believe that Tollin did not realize the news was being used by others to facilitate gambling.”
In People v. Pollack (204 Misc. 64), cited by the defendant, it was held that the activities involved in that case did not violate sections 580, 974, 986 and 1372 of the Penal Law. That issue is not before this court. The Corporation Counsel in his brief states: “ defendant argues that the type of service here in question is not of itself an illegal activity. We do not here charge that it is.” But see report of Thoroughbred Racing Protective Bureau that, ‘ ‘ illegal book-making cannot exist on a large scale without prompt information by bookmakers on races being run throughout the United States ” and testimony of Spencer Drayton that, “ I don’t think there is any more corrupting influence than the bookmaking wire service ”, both quoted in the opinion in the Pollack case (supra, p. 70).
In the opinion of this court, the Delaware Sports Service was engaged in the business of disseminating information relating to and the results of horse races at Aqueduct Race Track. The obtaining of such information was an essential part of the said business. The activities of the person using the pigeon coop were in furtherance of the conduct of the business. The defendant’s rental or license of his premises for an agreed compensation resulted in his premises being used for a business purpose.
*103 The court will now pass to a consideration of the question of whether this was a proper accessory use of the premises. Under the Zoning Resolution of the City of New York, dated December 15, 1961 the defendant’s premises are in R4 district. Section 11-12 of the Zoning Resolution establishes R4 as a general residence district. Section 21-00 contains the General Purposes of Residence Districts. Section 22-00 of chapter 2 is entitled: “Use Regulations” and states: “General Provisions — In
order to carry out the purposes and provisions of this resolution, the uses of buildings or other structures and of tracts of land have been classified and combined into Use Groups. A brief statement is inserted at the start of each Use Group to describe and clarify the basic characteristics of that Use Group.” Section 22-10 deals with “Uses Permitted as of Right section 22-11 states that Use Group No. 1 consists of single-family detached residential dwellings, and section 22-12 states that Use Group No. 2 consists of other types of residential developments. The permitted uses of both groups are (A) Residential uses, and (B) Accessory uses.
We are not dealing with a zoning resolution which sets forth prohibited uses thus making permissible uses that are not prohibited. The Zoning Resolution here is worded in affirmative language as to uses permitted, and therefore, uses not expressly permitted are prohibited.
An accessory use has a well-established meaning. In Rathkopf, Law of Zoning and Planning (vol. 1, p. 23-1) the learned author states: “ An * accessory use ’ is a use which is clearly incidental to and customarily found in connection with and located on the same zoning lot as is the principal use to which it is related.”
And at page 23-8 the same author states.; “ The character of the building determines what are the customarily incidental uses which are permissible in connection with its use, and the character of the building is determined by what is its main, principal and dominant use. This, of course, is a question of fact.”
In the instant case, the certificate of occupancy establishes and it has been so stipulated that the defendant’s house consists of a two-story one-family dwelling in a residential district.
The cases illustrate the meaning of an accessory use. The storage of an airplane was held not to be an accessory use in a single-residence district where there was no finding that such planes were customarily kept on residence lots in the immediate vicinity or in the State as a whole. (Building Inspector of Falmouth v, Gingrass, 338 Mass. 274.) A depot for picking up *104 garments .to be dry cleaned in the basement of an apartment house was held not to be a customarily incidental use to the operation of an apartment house. (Zahn v. Board of Adjustment of City of Newark, 45 N. J. Super. 516.) A candy and newspaper counter is not an accessory use of an apartment house. (Matter of 140 Riverside Drive v. Murdock, 276 App. Div. 550.) In Baddaur v. City of Long Beach (279 N. Y. 167), a leading case on the subject, the court held that using a one-family private residence as a rooming or boarding house was not a proper accessory use within the residential district and was prohibited by the ordinance. The court further stated (p. 175): ‘ ‘ The fact that the property may not be used for the business of keeping roomers and boarders does not bar the occupant from occasionally taking roomers or boarders, upon special considerations, where the practice is merely incidental and accessory to the principal use of the house as a home by the family of the occupant. ’ ’
Matter of Presnell v. Leslie (3 N Y 2d 384) was an article 78 proceeding. The petitioner was a ham radio operator, duly licensed by the Federal Communications Commission to operate and maintain a station at his residence in Westbury, Long Island, which was located in the residence zone of the village. For seven years he operated his station using an antenna on a 10-foot wooden pole. He sought to replace it with a 44-foot steel tower. The court held that the proposed tower was not an accessory use and stated (pp. 387-388): “ It is clear that, in the conduct of a hobby, the scale of its operation may well carry it beyond what is customary or permissible. Thus one who builds a stable in which to keep show horses has not constructed an accessory building (Pratt v. Building Inspector of Gloucester, 330 Mass. 344, 346).” And at page 389 the court said: “ Nor is he here being totally prevented from carrying on his hobby ’ ’.
There is a further difficulty which confronts the defendant. The defendant himself must be engaged in the accessory use. Here we have the residence occupied by the defendant and a third person engaged in activities for a business purpose in the pigeon coop on the roof.
The rule is stated in Rathkopf, Law of Zoning and Planning (vol. 1, pp. 23-13 — 23-15) as follows: “ Another basic factor is that the accessory use be by the same person who is engaged in the principal use, that is to say, if a portion of a house is used for professional purposes, the home itself must be used as a residence by the person engaging in the accessory professional use. It cannot be the home of someone other than the person practicing the profession there. Residence in the building by a *105 professional person, or by the person engaging in the home occupation, is a prerequisite to the incidental use of the portion for professional or home occupation use. The reason for this rule is aptly stated in Keller v. Town of Westfield [39 N. J. Super. 430]: ‘ * # * when the requirement for residence is dropped, what was a home becomes a professional building or a place of business.’ Thus, a clearly discordant element is injected into a high-class residential district and erosion of the overall zoning scheme begins ”.
It is the conclusion of this court that the use of the pigeon coop on the roof of the defendant’s premises in a residential district, for profit, for the purpose of permitting a wire service to obtain and disseminate information on horse races run at Aqueduct Race Track was a business use. It was not an accessory use permitted by law and it was inconsistent with its use as a residential dwelling. In the conduct of a hobby he went “beyond what is customary or permissible.” For pecuniary gain, he converted an innocuous pigeon coop into an observation tower and broadcasting studio. It is unimportant whether the media of communication be radio, telephone or television. (See State ex rel. Columbia Broadcasting Co. v. Superior Ct. for King County, 1 Wn. [2d] 379.) The use of a telephone does not alter the character of the activity. The use of defendant’s premises was part and parcel of the business of Delaware Sports Service and the information was essential to the conduct of its business.
The defendant directs the attention of this court to City of New York v. Staszyn (N. Y. L. J., May 25, 1962, p. 15, col. 6 [Supreme Ct., Queens County]). There the court, in the exercise of discretion, denied a motion for a temporary injunction upon the ground that the relief sought was a least substantially as broad as the belief sought upon the trial. That is not the question before this court.
The case of the Incorporated Vil. of Plandome Heights v. Hewitt (N. Y. L. J., July 16,1951, p. 89, col. 4) relied on by the defendant is not in point. There the action was to restrain the defendants from maintaining a telephone switchboard in their home. The defendants answered telephone calls from 18 subscribers for which they received $10 per month. The plaintiff adopted the Zoning Resolution in 1929. In 1949 the village boundary was extended to include the defendant’s property. The Board of Trustees thereafter undertook to extend the Zoning Ordinance to the annexed territory. The holding of the court was: “In this they failed. First no public hearing was held and no notice was given as required by sections 95 and 78 of the *106 Village Law, and second, the ordinance was not submitted to and approved by the Nassau County Planning Commission.” The remainder of what the court said was obiter dicta and this court has grave doubt whether that court would use the same language to approve the use of the defendants’ premises disclosed in this case. The case of Matter of Hoffman (Murdock) (N. Y. L. J., July 25,1945, p. 161, col. 1) cited by the defendant does not sustain his position. In that case the Board of Standards and Appeals had made a decision limiting the number of pigeons to 15 and that they be confined in the coop at all times. The pigeon coop was on the roof of a two-family house in a residence district. The court said: ‘ ‘ A careful examination of the record fails to disclose even a scintilla of proof that petitioner has kept his pigeons as a business enterprise * * * petitioner is not by law prohibited from keeping his pigeons as a hobby on the roof of his home in a residence district.” The case is authority for the proposition that there is no statutory prohibition against the keeping of the breed of petitioner’s pigeons in the City of New York, nor is there any express authority granted to any body or official to regulate the number that may be kept. That, however, is not this case.
In Wise v. Michaelis (203 N. Y. S. 2d 247, affd. 12 A D 2d 788) cited by defendant, the court held that the practice of hairdressing and cosmetology by the petitioner in her own home in a residential district was an accessory use. The basis of the decision was that it was a home occupation, the court stating (p. 249): “ Down through the ages women have been occupied in the home in improving their personal appearance and the personal appearance of other women.”
The determination of this court is that the defendant is found guilty. .